IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CHRISTOPHER H. WEST,                    )
                                        )
                    Petitioner,         )
                                        )
            v.                          )   C.A. No. 14-1513 (MN)
                                        )
ROBERT MAY, Warden, and ATTORNEY        )
GENERAL OF THE STATE OF                 )
DELAWARE,                               )
                                        )
                    Respondents.        )

## <u>MEMORANDUM OPINION</u>

Stephen A. Hampton, GRADY & HAMPTON, LLC, Dover, DE; Joseph A. Ratasiewicz, Nicholas Casamento, CASAMENTO & RATASIEWICZ, P.C., Media, PA – Attorneys for Petitioner.

Sean P. Lugg, Deputy Attorney General, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, DE – Attorney for Respondents.

March 21, 2022
Wilmington, Delaware

*Maryellen Noreika*

**NOREIKA, U.S. DISTRICT JUDGE:**

Petitioner Christopher H. West ("Petitioner") filed a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition").  (D.I. 3; D.I. 16).  The Honorable Gregory M. Sleet dismissed the Petition as time-barred on October 24, 2017.  (D.I. 68).  Petitioner filed a Rule 60(b) motion for reconsideration, which this Court denied.  (D.I. 78).  Petitioner appealed and the Third Circuit reversed and remanded the case for an additional determination on equitable tolling.  (D.I. 84).  On remand, the State waived the statute of limitations defense and the Court granted Petitioner's Rule 60(b) motion and re-opened Petitioner's habeas proceeding.  (D.I. 88).  Petitioner filed a Motion for Discovery and Reassertion of Petitioner's *Pro Se* Motions, with several of Petitioner's earlier *pro se* submissions attached.  (D.I. 89).  The Court issued an Order directing Petitioner to file a clarifying Memorandum in Support indicating which grounds Petitioner wished to pursue.  (D.I. 90).  Petitioner filed two Memoranda in Support.  (D.I. 91; D.I. 97).  The State filed an Answer in opposition, to which Petitioner filed several Replies.  (D.I. 98; D.I. 102; D.I. 103; D.I. 104).

I.      **BACKGROUND**

> The charges at issue stem from three separate bank robberies and one bank robbery attempt, all of which were committed within the span of less than a week.  Based on video surveillance and the description of the suspect from the witnesses to the bank robberies, a photo array was generated.  Delaware State Police showed the array to three people, all of whom identified [Petitioner] as the perpetrator of the robbery.
>
> There was a witness from the Citizens Bank robbery who observed the suspect using a dark colored Jeep Wrangler that identified [Petitioner] as the suspect.  In addition to being identified by the witness as the bank robber, the vehicle identified as being driven by the bank robber, a dark colored Jeep Wrangler, matched the description of the vehicle [Petitioner] drove.  In fact, [Petitioner] admitted to having committed the Citizen's Bank robbery and having driven a Jeep Wrangler to Citizen's Bank when he committed the bank robbery.

> [Petitioner] was also identified as the bank robber by the assistant
> manager at the Citizens Bank who was working at the time of the
> robbery.  The teller from the PNC bank robbery also identified
> [Petitioner] as the person who committed the PNC robbery.
>
> [Petitioner's] uncle also confirmed that the photo released from the
> Citizen's Bank robbery depicting the suspect was his nephew,
> [Petitioner].
>
> [Petitioner], when interviewed by the police, confessed to
> committing the three bank robberies and the attempted bank
> robbery.

*State v. West*, 2013 WL 6606833, at *1–2 (Del. Super. Ct. Dec. 12, 2013).

In August 2011, a New Castle County grand jury indicted Petitioner on two counts of first

degree robbery, second degree robbery, and attempted first degree robbery.  (D.I. 99-1 at 1, Entry

No. 2; D.I. 98 at 3).  On October 21, 2011, the Superior Court granted Petitioner's motion for a

psychiatric evaluation.  (D.I. 19-1 at 2, Entry Nos. 9, 10).  The psychiatric report concluding that

Petitioner was competent to enter a plea was provided to the Superior Court on December 1, 2011.

(D.I. 19-1 at 2, Entry No. 11).  On January 9, 2012, Petitioner pled guilty to one count each of first

and second degree robbery.  *See West v. State*, 100 A.3d 1022 (Table), 2014 WL 4264922, at *1

(Del. Aug. 28, 2014).  On March 30, 2012, the Superior Court sentenced Petitioner as a habitual

offender to a total of twenty-eight years at Level V incarceration, to be suspended after serving

twenty-five years in prison for decreasing levels of supervision.  Petitioner did not file a direct

appeal.  *Id*.

On February 27, 2013, Petitioner filed a *pro se* motion for post-conviction relief pursuant

to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion).  (D.I. 19-1 at 4, Entry No. 39).

The Superior Court appointed counsel to represent Petitioner.  *See West*, 2013 WL 6606833, at *2.

In November 2013, after determining that there were no meritorious issues to pursue, post-

conviction counsel filed a motion to withdraw along with a memorandum of law in support thereof.

*Id*.  The memorandum included the two arguments Petitioner still wished to pursue.  *Id*. at *2-3. On December 12, 2013, a Superior Court Commissioner issued a Report and Recommendation concluding that the Rule 61 motion should be denied and post-conviction counsel's motion to withdraw should be granted.  *See id*. at *7.  On January 7, 2014, the Superior Court adopted the Report and Recommendation, denied the Rule 61 motion, and granted post-conviction counsel's motion to withdraw.  *See West v. State*, 147 A.3d 234 (Table), 2016 WL 4547912, at *1 (Del. Aug. 31, 2016).  The Delaware Supreme Court affirmed that decision on August 28, 2014.  *See West v. State*, 100 A.3d 1022 (Table), 2014 WL 4264922 (Del. Aug. 28, 2014).

On February 24, 2015, Petitioner filed in the Delaware Superior Court a second Rule 61 motion and a motion to withdraw his guilty plea.  *See State v. West*, 2015 WL 3429919, at *1-2 (Del. Super. Ct. May 21, 2015).  The Superior Court denied both motions on May 21, 2015.  *Id*. Petitioner did not appeal that decision.

Petitioner filed a third Rule 61 motion on March 21, 2016.  *See West*, 2016 WL 4547912, at *1.  On May 16, 2016, the Superior Court summarily dismissed Petitioner's third Rule 61 motion as procedurally barred under Rule 61(d)(2).  *See id*.  The Delaware Supreme Court affirmed that decision on August 31 2016.  *See id.* at *2.

In April and May of 2016, Petitioner filed a Rule 35(a) motion and an amended Rule 35(a) motion for correction of sentence.  *See West v. State*, 148 A.3d 687 (Table), 2016 WL 5349354, at *1 (Del. Sept. 23, 2015).  The Superior Court denied the motions and the Delaware Supreme Court affirmed that decision on September 23, 2016.  *See id.*  at *2.

In the meantime, in December 2014, Petitioner filed in this Court a *pro se* federal habeas petition, followed by an amended petition and memorandum of points (hereinafter collectively referred to as "Petition I"), asserting the following five grounds for relief: (1) his habitual offender sentence is illegal because one of the predicate convictions is illegal; (2) his guilty plea was

unknowing and involuntary; (3) defense counsel provided ineffective assistance; (4) his confession was coerced; (5) the conditions of his confinement constituted cruel and unusual punishment; and (6) he was deprived of his Sixth Amendment right to counsel. (D.I. 3; D.I. 9). The State filed an answer asserting that Petition I should be denied as time-barred or, alternatively, because the claims lacked merit. (D.I. 21). The Honorable Gregory M. Sleet denied Petition I as time-barred in October 2017. (D.I. 67; D.I. 68). In September 2018, Petitioner filed a motion for reconsideration. (D.I. 69). The case was re-assigned to this Court, and the Court ordered the State to respond. (D.I. 73). The Court denied the motion for reconsideration. (D.I. 78). Petitioner appealed and the Third Circuit vacated the dismissal of the reconsideration motion and remanded the case for this Court to "determine whether [Petitioner] attempted to filed a (timely) habeas petition in June 2014 such that equitable tolling might be appropriate." (D.I. 84). In February 2021, the State informed the Court that they could neither prove nor disprove whether Petitioner attempted to file a timely habeas petition and waived their statute of limitations defense. (D.I. 86). In March 2021, the Court vacated the dismissal of Petitioner's habeas Petition and ordered the case reopened. (D.I. 88). Upon Petitioner's counsel's request (D.I. 87), the Court issued an Order providing Petitioner's counsel with an opportunity to "assess whether to re-assert and/or refile" Petitioner's previous *pro se* motions and/or filings (D.I. 88).

Petitioner's counsel filed a Motion for Discovery and Re-Assertion of Petitioner's *Pro Se* Motions. (D.I. 89). The filing by Petitioner's counsel consisted of four *pro se* submissions by Petitioner.[1] Unclear as to Petitioner's intent in attaching the previously denied filings without any

---

[1]     Three of the submissions were motions (D.I. 89-2; D.I. 89-3; D.I. 89-4) that had been previously denied by Judge Sleet. The other re-submitted filing was a document titled "Amended Petition." (D.I. 89-1). As that "Amended Petition" was filed after the State had already filed its Answer to the original petition (*see* D.I. 33), Judge Sleet ruled that the Court would not consider any new claims contained in the "Amended Petition" that did not "relate back" to the claims in the petition(s) filed prior to the State's Answer. (D.I. 50).

briefing,[2] the Court issued an Order: (1) rejecting Petitioner's Motion to the extent he was attempting to have the previously rejected submissions/claims included in the proceeding; (2) granting Petitioner's request to supplement and clarify claims that he had asserted prior to the State's filing of its answer to his original petition; and (3) directing Petitioner's counsel to file a Memorandum clarifying the grounds for relief still being pursued.  (D.I. 90).  Thereafter, Petitioner's counsel filed a Memorandum essentially stating that Petitioner was raising the same "several distinct grounds for relief" that had been presented in his original "*pro se* habeas filing." (D.I. 91 at 2).  Petitioner filed a *pro se* Supplement.  (D.I. 97).  The State filed an Answer.  (D.I. 98). Petitioner's counsel filed a Reply (D.I. 102), another Reply with Petitioner's additions (D.I. 103), and then another amendment to the Reply on Petitioner's behalf (D.I. 104).   From this point forward, the Court considers Petition I (D.I. 3; D.I. 16), Petitioner's Memorandum (D.I. 91), Petitioner's Supplement (D.I. 97), and Petitioner's first Reply (D.I. 102) as collectively comprising his request for habeas relief, and will refer to his request as "Petition."

## II.    GOVERNING LEGAL PRINCIPLES

### A.    The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United

---

[2]      The Court's Order dated March 9, 2021 provided Petitioner's counsel permission "**to assess whether to re-assert and /or refile** the *pro se* motions that were denied" when the original petition was denied in October 2017.  (D.I. 88) (emphasis added).  In granting such permission, the Court contemplated that Petitioner's counsel would parse through those motions and determine which, if any, could be re-asserted, and also provide an explanation for that determination.

States."   28 U.S.C. § 2254(a).   AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B.      Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law.  *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i)  there is an absence of available State corrective process; or
>    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).   A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits.  *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989). Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51.

To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that the errors at his trial [] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). If a petitioner attempts to excuse his default on the basis of ineffective assistance of counsel, he can satisfy the prejudice component of the "cause and prejudice" standard by meeting the prejudice standard needed to establish ineffective assistance of counsel under *Strickland*. *See Holland v. Horn*, 519 F.3d 107, 120 (3d Cir. 2008).

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v.*

*Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

### C.      Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits,[3] the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the state court proceeding. 28 U.S.C. § 2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). The deferential standard of § 2254(d) applies even when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied. *See Harrington v. Richter*, 562 U.S. 86, 98-101 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

---

[3]      A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. The mere failure to cite Supreme Court precedent does not require a finding that the decision is contrary to clearly established federal law. *See Early v. Packer*, 537 U.S. 3, 8 (2002). For instance, a decision may comport with clearly established federal law even if the decision does not demonstrate an awareness of relevant Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id*. In turn, an "unreasonable application" of clearly established federal law occurs when a state court "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of a prisoner's case." *Williams*, 529 U.S. at 413; *see also White v. Woodall*, 572 U.S. 415, 426 (2014).

Finally, when performing an inquiry under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III.   <u>DISCUSSION</u>

Petitioner asserts the following five grounds for relief:[4] (1) his habitual offender sentence is illegal because one of the predicate convictions was invalid; (2) his guilty plea was not knowing, voluntary, and intelligent; (3) defense counsel provided ineffective assistance; (4) his confession was coerced; and (5) he was denied his Sixth Amendment right to counsel.

### A.   Claim One:  Illegal Habitual Offender Status

In Claim One, Petitioner contends that his habitual offender sentence is illegal because one of the predicate convictions used for habitual offender status – his 2009 forgery conviction from Pennsylvania – is illegal.  (D.I. 3 at 5); *see also West*, 2013 WL 6606833, at *7.  According to Petitioner, his 2009 Pennsylvania conviction is illegal because the Pennsylvania court deprived him of his constitutional right to confront witnesses.[5]  (D.I. 3 at 5).  Petition I explains that he is "in [the] process of appealing PA conviction."  (*Id.*).

---

[4]     Petition I also includes a claim alleging that Petitioner was subjected to cruel and unusual punishment because he had to sleep on the floor without a mattress during pre-trial confinement.  (D.I. 3 at 10).  To the extent this claim challenges prison conditions as an independent claim, it does not assert an issue properly raised on federal habeas review. The Court notes that Petitioner presented the same conditions/cruel and unusual punishment argument in a separate action filed under 42 U.S.C. § 1983 seeking nine million dollars in damages.  (*See* D.I. 1 at 10 in *West v. Burley*, Civ. A. No. 14-1486-GMS).  On July 19, 2018, Judge Sleet dismissed that case with prejudice pursuant to a joint stipulation by the parties.  (*See* D.I. 87 and 88 in *West*, Civ. A. No. 14-1486).  In this proceeding, to the extent Petitioner's allegations concerning lack of sleep and a lack of mattress provide additional background information for his involuntary plea argument, the Court will consider it as part of the overall argument presented in Claim Two.

[5]     In his Reply, Petitioner asserts that his real contention in Claim One "regarding the applicability of the 'habitual offender' statute to [his] sentencing is based on his claim that his plea was not knowing and voluntary as he was denied adequate representation." (D.I. 102 at 1).  Petitioner does not clarify if the alleged inadequate representation about which he complains in Claim One occurred during the guilty plea process with respect to his 2009 Pennsylvania conviction or during the guilty plea process with respect to the 2012 Delaware conviction at issue in this proceeding.   To the extent the inadequate representation relates to the 2009 Pennsylvania conviction, the Court addresses it in its analysis of Claim One.  To the extent the inadequate representation relates to his 2012

Claim One is not a cognizable habeas claim.  First, to the extent Petitioner argues that the Superior Court misapplied Delaware's habitual offender statute to the facts of his case, the argument is a state law claim that does not provide a proper basis for federal habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (opining that claims based on errors of state law are not cognizable on habeas review.).

Second, to the extent Petitioner is indirectly challenging the legality of his 2009 Pennsylvania conviction for forgery, the argument is foreclosed by well-settled Supreme Court precedent.  In *Lacakawana Cnty. Dist. Att'y v. Coss*, 532 U.S. 394 (2001), the Supreme Court held that,

> [o]nce a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid.  If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

*Id*. at 403-04.  The only exception to this rule expressly recognized by the Supreme Court is if the prior enhancement conviction was obtained without the defendant having counsel, in violation of the Sixth Amendment as set forth in *Gideon v. Wainwright*, 372 U.S. 335 (1963).  *See Coss*, 532 U.S. at 404.

Here, Petitioner's 2009 Pennsylvania conviction is no longer open to direct or collateral attack because the 11.5 month – 25 month sentence that was imposed for that conviction expired

---

Delaware conviction, the Court construes Petitioner's explanation to be asserting an argument that his 2012 plea was not knowing and voluntary because he was not advised that he would be  subject to sentencing as a habitual offender due to his 2009 Pennsylvania conviction.  (*See* D.I. 99-11 at 4-5; D.I. 102 at 7; D.I. 102-1 at 5-9).  The Court views this argument as part of Petitioner's challenge to the voluntariness of Petitioner's guilty plea in Claim Two.

more than two years before Petitioner filed the original habeas Petition in this case.[6]  To the extent Petitioner may be contending that he was provided inadequate representation during his 2009 Pennsylvania case, only a complete denial of counsel with respect to Petitioner's 2009 Pennsylvania case would fall within the exception to the presumption of validity recognized in *Coss*.  Given these circumstances, the Court regards Petitioner's 2009 Pennsylvania conviction as "conclusively valid," meaning that the 2009 conviction cannot provide a basis for challenging his habitual offender sentence.  Accordingly, the Court will deny Claim One for failing to assert an issue cognizable on federal habeas relief.

### B.    Claim Two:  Involuntary, Unknowing, and Unintelligent Guilty Plea

Petitioner contends that his guilty plea was not knowing, voluntary, and intelligent because he was under the influence of psychotropic medication and incompetent at the time he entered the plea.  Petitioner asserts that the following "warning flags" should have caused the Superior Court to conduct an independent inquiry into his competency: (1) he had been in the psych ward section of the Howard R. Young facility on suicide watch; (2) at the time of his plea he was taking several prescribed medications: Wellbutrin (anti-depressant), Lithium (to treat Bipolar Disorder), and Risperdal (anti-psychotic); and (3) he was in a straight-jacket, restraint mittens, and a spit mask during the entire plea colloquy.[7]  (D.I. 102 at 1-3).  Petitioner also contends that his guilty plea was involuntary because: (1) he was not appropriately informed that his 2009 Pennsylvania conviction could cause him to be sentenced as an habitual offender (D.I. 102 at 1); and (2) he was

---

[6]    (*See* D.I. 99-2 at 29-47).

[7]    Petition I also includes a separate claim alleging that he suffered "cruel and unusual" prison conditions, including being made to sleep on the floor without  a mat.  (D.I. 3 at 10).  As previously explained, the Court views this contention as providing additional support for Petitioner's argument in Claim Two that he was not in the right state of mind to enter a guilty plea rather than as asserting an independent ground for relief.  *See supra* Section III.FN4.

coerced into pleading guilty because "Deputy Warden Mark Emig [] told him to plead guilty or spend all 25 years to life butt naked in the hole" (D.I. 3 at 12).

Petitioner presented Claim Two to the Superior Court in his Rule 61 motion and then to the Delaware Supreme Court on post-conviction appeal.  The Superior Court denied Claim Two as meritless, and the Delaware Supreme Court affirmed that ruling "on the basis of, and for the reasons provided in, the [Superior Court] Commissioner's thorough and well-reasoned report and recommendation that was adopted by the Superior Court." *West*, 2014 WL 4264922, at *2.  Given these circumstances, Petitioner will only be entitled to relief if the Superior Court's decision[8] was either contrary to, or an unreasonable application of, clearly established federal law.

The conviction of an accused while he is legally incompetent violates due process.  *See Pate v. Robinson*, 383 U.S. 375, 378 (1966); ); *Drope v. Missouri*, 420 U.S. 162, 172 (1975).  A defendant is deemed competent to plead guilty if he has sufficient present ability to consult with his attorney with a reasonable degree of rational and factual understanding about the proceedings against him or if he assists in his defense.  *See Godinez v. Moran,* 509 U.S. 389, 396, 398-99 (1993) (holding that the standard governing competency to plead guilty is the same as that governing competency to stand trial); *Dusky v. U.S.*, 362 U.S. 402 (1960) (setting forth the standard governing competency to stand trial).  The Supreme Court has identified several factors to be considered when assessing a defendant's competency to stand trial/enter a guilty plea, including attorney representations, prior medical opinions regarding the defendant's mental competence to stand trial, evidence of the defendant's prior irrational behavior, and the defendant's demeanor at trial or plea

---

[8]     *See Wilson v. Sellers*, 138 S. Ct. 1188, 1193-94 (2018) (reiterating that when a higher court affirms a lower court's judgment without an opinion or other explanation, federal habeas law employs a "look through" presumption and assumes that the later unexplained order upholding a lower court's reasoned judgment rests upon the same grounds as the lower court judgment).

colloquy. *See Drope*, 420 U.S. at 177 n.13, 180. Nevertheless, "[e]ven when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change" in his competency. *Id*. at 181. Consequently, in order to satisfy the requirements of due process, a trial court must *sua sponte* conduct a competency hearing when there is a reason to doubt the defendant's competency and the evidence is sufficient to put the trial court on notice of a potential competency problem. *See Pate*, 383 U.S. at 385.

It is well settled that "competency is a state court factual finding that, if supported by the record, is presumed correct." *See Thompson v. Keohane*, 516 U.S. 99, 111 (1995); *Demosthenes v. Baal*, 495 U.S. 731, 735 (1990). Implicit factual findings are presumed correct under § 2254(e)(1) to the same extent as express factual findings. *See Campbell v. Vaughn*, 209 F.3d 280 285–86 (3rd Cir. 2000). Consequently, a court's implicit and explicit factual findings that a petitioner was competent are presumed correct, unless the petitioner can rebut the presumption of correctness by clear and convincing evidence. *See Taylor v. Horn*, 504 F.3d 416, 433 (3d Cir. 2007).

The record in this case demonstrates that the Superior Court reasonably determined the facts when implicitly finding that Petitioner was mentally competent to enter a guilty plea. Prior to Petitioner's plea, defense counsel filed a motion to have Petitioner undergo a psychiatric evaluation. The Superior Court granted the motion and Petitioner was referred to the Delaware Psychiatric Center for an evaluation to "determin[e] competency and to obtain treatment for his own well-being." (D.I. 99-6 at 142). In a Forensic Mental Health Examination Report ("Report") dated November 8, 2011, the psychologist who evaluated Petitioner explained that Petitioner was taking Lithium, Wellbutrin, and Risperdal at the time of his psychiatric evaluation – the same medications Petitioner stated he was taking at the time of his plea colloquy. (D.I. 99-6 at 16, 144). The Report also detailed Petitioner's polysubstance dependence and his diagnoses of major

depressive disorder and personality disorder with antisocial and borderline traits, finding that those factors did not "appear at present to impede [Petitioner's] capacities to understand his legal case, or to work with his attorney." (D.I. 99-6 at 154). The Report then concluded that Petitioner "possesses adequate factual and ration understanding of this pending legal case, as well as adequate capacity to assist in his own defense, and is therefore *competent to stand trial*." (D.I. 99-6 at 154) (emphasis in original).

The Report was provided to the Superior Court on December 1, 2011 and Petitioner's plea colloquy occurred on January 9, 2012. At the opening of the plea colloquy, defense counsel briefly mentioned Petitioner's mental health evaluation, the fact that he was taking prescription medication, and the fact that he had been determined to be competent. Defense counsel stated that he had met with Petitioner on several occasions and that Petitioner was able to understand and comprehend everything they had discussed. Defense counsel also informed the Superior Court that he believed Petitioner was entering the plea knowingly, intelligently, and voluntarily. Thereafter, the Superior Court asked Petitioner: (1) if he was currently taking medication; (2) to identify the medication; (3) if he was feeling well enough to enter a plea; and (4) if he understood everything defense counsel had represented to the court regarding the charges against Petitioner, the potential sentences, and Petitioner's competency evaluation. (D.I. 99-6 at 15-16). Petitioner was articulate and lucid in his affirmative responses to the Superior Court's questions. Petitioner indicated that he had discussed his guilty plea with defense counsel, understood the plea and rights he was waiving, and understood the nature and consequences of the proceeding. Petitioner was aware enough to indicate that, although he and defense counsel had reviewed the plea agreement and Truth-in-Sentencing guilty plea form, they had not reviewed the indictment. The Superior Court provided defense counsel an opportunity to review the indictment with Petitioner. After confirming that Petitioner understood the charges in the indictment, the representations on the

Truth-in-Sentencing form, and that Petitioner was entering a guilty plea because he committed the crimes, the Superior Court concluded that Petitioner's plea was "knowingly, intelligently, and voluntarily given." (D.I. 99-6 at 17).

Petitioner contends that his appearance in court wearing a straight-jacket, restraint mittens, and a spit mask coupled with his medication regimen triggered the Superior Court's duty to conduct an independent inquiry into his competency. The Court disagrees. Petitioner himself acknowledges that the straight-jacket and "restraints were needed due to [his] propensity to harm himself and being under suicide watch." (D.I. 102 at 5). And, although the improper administration of psychiatric medicine can render an individual temporarily incompetent,[9] the fact that a defendant is taking medication for mental health issues does not *per se* render a defendant incompetent to stand trial or automatically trigger a court's duty to conduct an independent competency determination. *See, e.g., Layne v. Moore*, 90 F. App'x 418, 423 (3d Cir. 2004) (the fact that petitioner was taking medications "in itself does not show that he was mentally incompetent."); *Sheley v. Singletary*, 955 F.2d 1434, 1439 (11th Cir. 1992) (when determining the adequacy of a court's inquiry into a defendant's competency, the "focus [. . .] is what the trial court did in light of what it knew."); *Chichakly v. United States*, 926 F.2d 624, 631-32 (7th Cir. 1991) (even if a defendant alleges that he was incompetent due to psychiatric medications, "[t]here is certainly no need to conduct a competency hearing when there is no evidence before the Court of incompetency and when the defense attorney failed to request one and neither the prosecuting attorney nor the judge saw a need for one."). Rather, when presented with "significant evidence" that the defendant "has recently taken drugs, the court has the obligation to inquire further *before*

---

[9]     *See Riggins v. Nevada*, 504 U.S. 127, 137 (1992).

*determining that a competency hearing is necessary*." *United States v. Col*e, 813 F.2d 43, 47 (3d Cir. 1987) (emphasis added).

The record in this case shows that the Superior Court satisfied its obligation to make a threshold inquiry into whether a more thorough and independent inquiry into Petitioner's competency was necessary. Defense counsel informed the Superior Court that he had several meetings with Petitioner and believed Petitioner understood the proceeding and could make a reasoned decision to plead guilty. Petitioner told the Superior Court that he was on medication and was able to identify the medication. The Superior Court asked Petitioner if he understood what was going on during the colloquy, and Petitioner answered affirmatively. Significantly, the Superior Court was able to assess Petitioner's demeanor when answering its questions, and also knew that Petitioner had been declared competent to enter a plea. Nothing in this record of the plea colloquy indicates that Petitioner did not understand the nature of the proceedings against him or that he could not consult with defense counsel to assist in his case. *See Indiana v. Edwards*, 554 U.S. 164, 170 (2008); *United States v. Lessner*, 498 F.3d 185, 96 (3d Cir. 2007). Thus, given Petitioner's failure to provide clear and convincing evidence to the contrary, the Court accepts the Superior Court's implicit factual determination that Petitioner was competent to enter a guilty plea.[10]

---

[10] To the extent Petitioner argues that a psychiatric evaluation ordered by the Delaware Superior Court in February 2015 is relevant to the Court's instant analysis, the argument is unavailing. As a factual matter, the Superior Court did not order a new competency evaluation, but rather, ordered a psychiatric evaluation to "[d]etermine psychiatric or psychological treatment." (D.I. 21-1 at 1). Additionally, an evaluation of Petitioner's competency performed years after he entered his guilty plea has no bearing on the determination of his competency at the time of his guilty plea. For these reasons, the Court also rejects Petitioner's contention that the transcript of the clarification of his sentence that occurred in May and June 2016 demonstrates "his lack of mental ability to know what occurred in January 2012." (D.I. 102 at 7).

Having found that the Superior Court reasonably determined the facts when implicitly concluding that Petitioner was legally competent to enter a guilty plea, the Court must next determine if the Superior Court's conclusion that Petitioner's guilty plea was voluntary, knowing, and intelligent was contrary to, or based upon an unreasonable application of, clearly established federal law.  In cases where the petitioner's conviction rests on a guilty plea, the "focus of federal habeas inquiry is the nature of [defense counsel's] advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity."  *Tollett v. Henderson*, 411 U.S. 258, 266 (1973).  The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it."  *Brady v. United States*, 397 U.S. 742, 749 (1970).  When assessing the voluntary nature of a plea, the representations made by a defendant under oath during a guilty plea colloquy "constitute a formidable barrier in any subsequent collateral proceedings" and "carry a strong presumption of verity."  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  As explained by the Third Circuit, "[t]he ritual of the [plea] colloquy is but a means toward determining whether the plea was voluntary and knowing.  A transcript showing full compliance with the customary inquiries and admonitions furnishes strong, although not necessarily conclusive, evidence that the accused entered his plea without coercion and with an appreciation of its consequences."  *United States v. Stewart*, 977 F.2d 81, 84 (3d Cir. 1992).

Here, although that the Superior Court did not reference federal law when denying Petitioner's arguments that his guilty plea was involuntary because he was not properly informed about the effect of his 2009 Pennsylvania conviction and because his confession was coerced, the Superior Court's decision was not contrary to clearly established federal law because it cited Delaware cases which articulate the standard in *Blackledge*.[11]  The Court also concludes that the

---

[11]     The Superior  Court cited *State v. Harden*, 1998 WL 735879, *5 (Del. Super. Ct. 1998) and *State v. Stuart*, 2008 WL 4868658, *3 (Del. Super. Ct. 2008).  These cases either cite

Superior Court did not unreasonably apply clearly established federal law when denying Claim Two.  The transcript of Petitioner's plea colloquy demonstrates that Petitioner was informed that he would be declared a habitual offender and that his 2009 Pennsylvania conviction would serve as one of the three predicate convictions.  (D.I. 99-6 at 15).  The transcript contains his clear and explicit statements that he had discussed his case with defense counsel and understood that, if sentenced as a habitual offender, he faced a minimum mandatory sentence of 25 years to life for the first-degree robbery charge.  He responded affirmatively when asked if he was "freely and voluntarily pleading guilty to these charges," and responded negatively when asked if "anyone threatened or forced [him] to enter in this plea." (D.I. 99-6 at 17).  In turn, the Truth-In-Sentencing Guilty Plea Form signed by Petitioner indicates that he knowingly and voluntarily entered into his plea agreement; he had not been promised anything not contained in the plea agreement; he was not forced or threatened to enter the plea agreement; and he knew he faced a possible maximum sentence of life under the criminal penalty statutes, with a minimum mandatory sentence of twenty-five years.  (D.I. 99-6 at 19).

Petitioner has failed to provide compelling evidence as to why the statements he made during the plea colloquy and on the Truth-in-Sentencing Form should not be presumptively accepted as true.  Therefore, based on the aforementioned record, the Court concludes that the Superior Court reasonably applied *Blackledge* in holding that Petitioner was bound by the representations he made during the plea colloquy and on the Truth-In-Sentencing form.  Accordingly, the Court will deny Claim Two for failing to satisfy the standard articulated in § 2254(d).

---

to *Blackledge* and articulate the same standard or cite to other Delaware decisions which cite *Blackledge*.

**C.       Claim Three:  Ineffective Assistance of Counsel**

As a general rule, ineffective assistance of counsel claims are reviewed pursuant to the two-pronged standard established in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under the first *Strickland* prong, the petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance.  *Strickland*, 466 U.S. at 688.  The second *Strickland* prong requires the petitioner to demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different."  *Id*. at 687–96.  A reasonable probability is a "probability sufficient to undermine confidence in the outcome."  *Id*. at 688.  In the context of a guilty plea, a petitioner satisfies *Strickland*'s prejudice prong by demonstrating that, but for counsel's error, there is a reasonable probability that he would have insisted on proceeding to trial instead of pleading guilty.  *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  A petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal.  *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987).  A court can choose to address the prejudice prong before the deficient performance prong, and reject an ineffective assistance of counsel claim solely on the ground that the defendant was not prejudiced.  *See Strickland,* 466 U.S. at 698.  Finally, although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.

In *United States v. Cronic*, 466 U.S. 648, 659 n. 25 (1984), the United States Supreme Court articulated a very limited exception to *Strickland*'s prejudice requirement, holding that there are three situations in which prejudice caused by an attorney's performance will be presumed: where the defendant is completely denied counsel at a critical stage; where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing;" or where the circumstances

are such that there is an extremely small likelihood that even a competent attorney could provide effective assistance, such as when the opportunity for cross-examination has been eliminated.  *See Cronic*, 466 U.S. at 659 & n.25.  With respect to exception two, the *Cronic* presumption of prejudice only applies when counsel has completely failed to test the prosecution's case throughout the entire trial.  *See Bell v. Cone*, 535 U.S. 685, 697 (2002).

In Claim Three, Petitioner contends that defense counsel provided ineffective assistance by: (1) failing file a motion to suppress based on Petitioner's assertion that his confession was coerced (D.I. 3 at 7); (2) failing to keep him informed of discovery (*Id*.); (3) not consistently communicating with Petitioner during the time-period leading up to the guilty plea because of the restrictions placed on Petitioner's access to phone and mail (*Id*.); and (4) letting another public defender represent him during the preliminary hearing (D.I. 16 at 1).

The record reveals that Petitioner did not present sub-argument four concerning a different public defender representing him during his preliminary hearing to the Delaware Supreme Court in any of his state post-conviction proceedings.  Although the Court concurs with the State's assertion that this particular sub-argument is therefore procedurally barred from habeas review, the Court will deny the argument as meritless.  As Petitioner concedes that he was represented by a substitute assistant public defender during his preliminary hearing, *Cronic* is inapplicable to Petitioner's instant complaint.  His argument also fails to warrant relief under *Strickland* and *Hill*, because he does not assert any specific allegations of deficient performance or prejudice with respect to the representation provided by the substitute assistant public defender.

As for the remaining sub-arguments in Claim Three, the Delaware Supreme Court rejected the arguments as meritless in Petitioner's first Rule 61 appeal after reviewing them under a standard identical to the *Strickland/Hill* standard.  In his Reply, Petitioner asserts that the Delaware Supreme Court erred by applying the *Strickland/Hill* standard to these three sub-arguments of

Claim Three because it should have presumed prejudice pursuant to *Chronic* . (D.I. 102 at 7)  He argues that defense "counsel entirely failed to subject the prosecution's case to meaningful adversarial testing" by "fail[ing] to provide and discuss discovery [and] review all the evidence with [Petitioner]." (D.I. 102 at 8).

Given Petitioner's presentation, the Court construes the remainder of Claim Three as alleging that Petitioner's case falls within the second exception identified in *Cronic*.  Petitioner, however, cannot demonstrate that he suffered the complete lack of representation required to invoke the *Cronic* exception.  The record reveals that defense counsel filed a motion for reduction of bail, a motion to have Petitioner undergo a psychiatric evaluation, and negotiated a plea offer that provided a substantial benefit to Petitioner.  Accordingly, *Cronic* is inapplicable, and the Court will consider Petitioner's remaining three ineffective assistance of counsel allegations under *Strickland* and *Hill.*

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the Delaware Supreme Court did not specifically apply the *Strickland/Hill* standard when affirming the Superior Court's decision.  Nevertheless, the Court concludes that the Delaware Supreme Court's decision was not contrary to *Strickland* or *Hill,* because the Delaware cases[12] cited by the Delaware Supreme Court refer to the applicable precedent.  *See Fahy v. Horn,* 516 F.3d 169, 196 (3d Cir. 2008) (Supreme Court of Pennsylvania's decision was not "contrary to" clearly established Federal law because appropriately relied on its own state court cases, which articulated the proper standard derived from Supreme Court precedent); *Williams,* 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

---

[12]     The Delaware Supreme Court cited to *Foote v. State*, 38 A.3d 1254 (Table), 2012 WL 562791 (Del. Feb. 21, 2012), which cited to cases that relied on *Strickland* and *Hill*.

The Delaware Supreme Court also reasonably applied clearly established federal law when denying the first three sub-arguments in Claim Three. Citing to Delaware precedent articulating the same principles set forth in *Blackledge*, the Delaware Supreme Court determined that Petitioner failed to satisfy the prejudice prong of *Strickland* and *Hill* because the record reflected "that the plea provided a substantial benefit to [Petitioner], and that [Petitioner] discussed the plea extensively with his trial counsel and was satisfied with trial counsel's representation." *West*, 2014 WL 4264922, at *2. As previously discussed with respect to Claim Two, Petitioner has failed to provide any compelling reason as to why the statements he made during the plea colloquy should not be presumptively accepted as true. Consequently, the Court finds that the Delaware Supreme Court reasonably applied *Blackledge* in holding Petitioner bound by the representations he made during his plea colloquy.

Given this determination, the Court further concludes that the Delaware Supreme Court reasonably applied the *Strickland/Hill* standard in holding that Petitioner failed to demonstrate that he suffered actual prejudice as a result of defense counsel's actions. Accordingly, the Court will deny Claim Three for failing to satisfy the standard in § 2254(d).

**D.     Claim Four:  Coerced Confession**

In Claim Four, Petitioner contends that his confession was coerced because the "arresting officers told me they would kill me if I didn't confess." (D.I. 3 at 12). On post-conviction appeal, the Delaware Supreme Court denied Claim Four as waived by Petitioner's guilty plea. *See West*, 2014 WL 4264922, at *2.

As articulated by the Supreme Court in *Tollett v. Henderson*:

> [A] guilty plea represents a break in the chain of events which has
> preceded it in the criminal process. When a criminal defendant has
> solemnly admitted in open court that he is in fact guilty of the
> offense with which he is charged, he may not thereafter raise
> independent claims relating to the deprivation of constitutional

23

> rights that occurred prior to the entry of the guilty plea.  He may
> only attack the voluntary and intelligent character of the guilty plea
> by showing that the advice he received from counsel was
> [constitutionally ineffective].

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  A voluntary and knowing guilty plea bars a defendant from raising antecedent non-jurisdictional[13] constitutional violations "not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is established."  *Menna v. New York*, 423 U.S. 61, 62 n. 2 (1975).

Once again, although the Delaware Supreme Court did not reference federal law when denying Claim Four, its decision was not contrary to clearly established federal law because it appropriately relied on Delaware case law articulating the proper federal standard.  Additionally, because Petitioner's plea was counseled, knowing, and voluntary, the Delaware Supreme Court's denial of Claim Four did not involve an unreasonable application of *Tollett* or *Menna*.  Accordingly, the Court will deny Claim Four for failing to satisfy the standard in § 2254(d).

### E.      Claim Five:  Denial of Sixth Amendment Right to Counsel

In his final Claim, Petitioner appears to argue that he was denied his Sixth Amendment right to counsel of choice because, due to the "severe nature of [his] confinement" (including "deprivation of phone and mail privileges as well as visits"), he "was not aware [his] family had offered to cover the fee for private counsel."  (D.I. 16; D.I. 99-5 at 1).  He also appears to argue that he was deprived of his Sixth Amendment right of access to counsel because the conditions of his confinement prevented him from discussing his case privately with defense counsel.  (D.I. 16; D.I. 99-3 at 187).  Based on the foregoing, the Court views Claim Six as alleging that the conditions

---

[13]      As explained by the Court of Appeals for the Tenth Circuit, the term non-jurisdictional is somewhat confusing; rather, "[t]he most accurate statement of the law would be . . . [that a] guilty plea waives all defenses except those that go to the court's subject-matter jurisdiction and the narrow class of constitutional claims involving the right not to be haled into court."  *United States v. DeVaughn*, 694 F.3d 1141, 1193 (10th Cir. 2012).

of Petitioner's confinement constructively deprived him of his Sixth Amendment right of access to counsel and his right to counsel of choice. Petitioner vaguely asserted these arguments in his first Rule 61 proceeding, but the Delaware state courts did not address them. For the following reasons, the Court concludes that both arguments lack merit.

### 1.       Right to counsel-of-choice

Although the Sixth Amendment guarantees a criminal defendant an absolute right to the assistance of counsel, it does not guarantee a defendant an absolute right to counsel of his choice. *See Wheat v. United States*, 486 U.S. 153, 159 (1988); *United Sates v. Gonzalez-Lopez*, 548 U.S. 140, 151-52 (2006). "[T]he essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159. A defendant has "the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-25 (1989). An erroneous deprivation of the right to choice of counsel constitutes a structural error requiring reversal of a criminal defendant's conviction. *See Gonzalez-Lopez*, 548 U.S. at 150. Importantly, however, the Sixth Amendment right to counsel of choice does not extend beyond a defendant's right to spend his own nonforfeitable assets. *See United States v. Jamieson*, 427 F.3d 394, 405 (6th Cir. 2005).

Here, Petitioner does not allege that (a) he was denied the right to use his own assets to retain a private attorney; (b) he was unhappy with defense counsel's representation during the pretrial stage and communicated that dissatisfaction to the Superior Court; and/or (c) he requested and was denied substitute counsel. Notably, during the plea colloquy, Petitioner did not express any dissatisfaction with defense counsel's representation when asked if he had any questions or

25

concerns.  (D.I. 99-6 at 17).  Thus,  Petitioner has failed to demonstrate how the conditions of his

pre-trial confinement constructively or actually deprived him of his right to counsel of choice.

### 2.    Right of access to counsel

The Sixth Amendment guarantee of counsel includes the "opportunity for . . . counsel to

confer, to consult with the accused, and to prepare his defense." *Avery v. Alabama*, 308 U.S. 444,

446 (1940).  Complete denial of the assistance of counsel – whether real or constructive – is *per*

*se* reversible error.  *See Perry v. Leeks*, 488 U.S. 272, 280 (1989).  Nevertheless, not every

restriction on counsel's access to the defendant constitutes a deprivation of the right to counsel in

violation of the Sixth Amendment.  *See id*. at 280-85 (holding that prohibition of consultation

between defendant and defense counsel during brief recess between defendant's testimony on

direct and cross-examination did not amount to complete denial of counsel).

In this case, even if the conditions of Petitioner's confinement rendered defense counsel's

representation of Petitioner more difficult, those difficulties did not amount to a complete denial

of access to counsel.  Petitioner was represented by defense counsel when he entered his guilty

plea.  Defense counsel stated, without correction or objection by Petitioner, "I've met with

[Petitioner] on a number of different occasions . . . And he has been able to understand and

comprehend everything we've discussed." (D.I. 99-6 at 15).  When viewed in context with defense

counsel's unopposed statement regarding meeting with Petitioner several times before the plea

colloquy, Petitioner's instant bald and unsupported assertion does not explain how the lack of

privacy and restrictions on his access to the phone, mail, and passing documents deprived him of

his access to counsel.

Accordingly, the Court will deny Claim Five as meritless.

26

## IV.     <u>CERTIFICATE OF APPEALABILITY</u>

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

The Court has concluded that the instant Petition fails to warrant federal habeas relief and is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the Court will not issue a certificate of appealability.

## V.     <u>CONCLUSION</u>

For the reasons stated, the instant Petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability. An appropriate Order shall issue.